**SO ORDERED.**

**SIGNED this 20 day of October, 2011.**

_____
**Randy D. Doub
United States Bankruptcy Judge**

_____

**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
NEW BERN DIVISION**

IN RE:

| | |
|---|---|
| **GEORGIA ARNETTE GREEN,** | **CHAPTER 7** |
| | **CASE NO. 09-06673-8-RDD** |
| **DEBTOR** | |

**ORDER ALLOWING MOTION FOR SANCTIONS AND DENYING
MOTION FOR CONTEMPT OF COURT**

Pending before the Court is the Motion for Sanctions for Violation of the Automatic Stay and Contempt of Court filed by Georgia Arnette Green (the "Debtor") on April 29, 2011 (the "Motion") and the Response in Opposition to Motion for Sanctions (the "Response") filed by East Carolina University ("ECU") on June 9, 2011. The Court conducted a hearing on September 29, 2011 in Wilson, North Carolina to consider the Motion and the Response.

The Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code on August 10, 2009. The Debtor's case was closed on May 26, 2010. An order reopening the case was entered on December 1, 2010, and the discharge was entered that same day. In the Motion, the Debtor alleges that ECU violated the automatic stay provided for in section 362 of the Bankruptcy Code. The Debtor also alleges that ECU violated the injunction against collecting or recovering a

discharged debt as provided for in section 524(a) of the Bankruptcy Code. The Debtor proceeded pro se for the entirety of her case.

## BACKGROUND

The Debtor attended ECU for a number of semesters including the Fall of 2007. The evidence presented at the hearing shows that the Debtor received grants and scholarships from various sources to fund her education. In the Fall of 2007, one of these sources was a Federal Perkins Loan in the amount of $750.00. Federal Perkins Loans are managed by the Office of Student Loans at ECU. The letters and invoices ECU sent the Debtor regarding payment of the Perkins Loan are the subject of the alleged willful violations of the automatic stay the Debtor asserts against ECU.

Another source of the Debtor's financial aid was a North Carolina Department of Health and Human Services, Division of Services for the Blind grant, which paid the remainder of any unpaid tuition not covered by other sources of financial aid, such as federal grants and loans, or institutional grants and loans. At some point during the Fall 2007 semester, the Debtor's student loan account received a disbursement of a grant from the Division of Services for the Blind prior to the disbursement of all other financial aid. Subsequent to the grant from the Division of Services for the Blind, the Debtor's account with ECU received a disbursement of a Pell Grant and an East Carolina University Grant. This resulted in an overpayment by the Division of Services for the Blind of approximately $1,949.83 that ECU was required to refund. As such, the Debtor became liable to ECU for $1,949.83 plus interest because ECU repaid the Division of Services for the Blind on her behalf.

Subsequent to the petition date, the Debtor continued attending ECU. Specifically, Debtor attended two Summer Sessions at ECU in the Summer of 2010. The Debtor withdrew from school

during one of these sessions, causing her to become ineligible for some of her financial aid. As such, a portion of the financial aid for which the Debtor had not earned by finishing the session was returned to its originator by ECU. This resulted in the Debtor owing ECU $3,212.00. After the Debtor's discharge was entered, ECU began billing the Debtor for the unpaid $3,212.00 and the $1,949.83 overpayment from the Fall of 2007 plus interest totaling $5,344.50. The attempts to collect on the $5,344.50 liability after the discharge was entered on December 1, 2010, are the subject of the motion for contempt the Debtor asserts against ECU.

**Violation of Section 362**

The Debtor appeared pro se at the September 29, 2011 hearing. The Debtor introduced evidence tending to show ECU attempted to collect on an outstanding pre-petition debt while the automatic stay was in place. More specifically, the Debtor proffered letters and invoices sent by the ECU Office of Student Loans in an attempt to collect on the $750.00 debt that were mailed after the automatic stay was in effect and after ECU received notice of the filing of the bankruptcy petition. ECU stipulates to the Court that these letters and invoices were sent to the Debtor at her address at 3363 Hugo Road, Hookerton, North Carolina after the petition date of August 10, 2009. This evidence includes: (1) an invoice from the Office of Student Loans for $40.00 dated September 15, 2009; (2) an invoice from the Office of Student Loans for $82.00 dated October 15, 2009; (3) a letter from Debra Bailey, Director of Student Loans seeking payment of $124.00 dated November 4, 2009; and (4) a letter from Debra Bailey seeking payment of $166.00 dated December 4, 2009.

The Debtor's petition lists ECU as a creditor in the amount of $3,000.00. Notice of the

Debtor's bankruptcy petition was sent to ECU on August 12, 2009.[1]  Despite receiving notice that the Debtor filed a petition under Chapter 7 of the Bankruptcy Code and that the automatic stay was in place, ECU subsequently sent the Debtor a total of four letters or invoices in an attempt to collect on the $750.00 debt.  The Debtor asserts that these collection attempts were willful violations of the automatic stay and that sanctions should be imposed against ECU.

In the Response, ECU asserts that it did not engage in any actions that warrant the imposition of sanctions.  At the hearing, ECU stipulated to the previously mentioned invoices and letters sent by the Office of Student Loans.  However, ECU argued at the hearing that the collection attempts were not willful violations of the automatic stay because they were inadvertently sent to the Debtor as a result of a lack of communication between the various departments at ECU.  ECU presented evidence through the testimony of Debra Bailey, University Cashier for ECU.  Ms. Bailey testified that the University Cashier and the Office of Student Loans are separate departments within ECU and do not operate on the same accounting systems.  Ms. Bailey explained that while a hold had been placed on the Debtor's account with the University Cashier upon learning of the bankruptcy petition, the Office of Student Loans was not informed of the bankruptcy petition and made no changes to the Debtor's account.  Ms. Bailey further explained that the letters and invoices were printed and mailed through an automated process on a thirty-sixty-ninety day interval.  Therefore, any mailing of them was not an intentional act but an error produced because the Office of Student Loans was not informed of the bankruptcy petition.  Furthermore, Ms. Bailey testified that ECU has since taken

---

[1] Notice of the bankruptcy, including notice of the Chapter 7 Section 341 Meeting of Creditors, was mailed to ECU on August 12, 2009. Notice was mailed to Dee Bowling at ECU, East 5th Street, Greenville, NC 27858 and Jack Tawney at ECU, 305 East 10th Street, Greenville, NC 27858. The Debtor testified she also personally informed parties at ECU of the bankruptcy via telephone conversations and e-mail.

steps to institute a procedure whereby the different departments within the university are required to check a software system to ensure no student has filed a bankruptcy petition prior to attempting to collect on a debt. As such, ECU argues that although the letters and invoices were mailed after the automatic stay was in place there was no willful violation of the stay and sanctions are not warranted.

**Violation of the Injunction After Discharge**

The Debtor further contends that ECU should be held in contempt of court for violating the injunction imposed against collecting upon pre-petition debts after a discharge has been entered pursuant to 11 U.S.C. § 524(a). At the hearing, the Debtor presented evidence of billings sent by ECU to her after the discharge was entered on December 1, 2010. Specifically the Debtor asserts that ECU sent a letter demanding payment on January 21, 2011, an invoice on February 16, 2011, and an account statement on March 15, 2011. The Debtor claims that ECU was enjoined from attempting to collect or recover any debts after the discharge was entered on December 1, 2010. Therefore, the Debtor contends ECU should be held in contempt.

ECU contends the debts incurred are excepted from discharge pursuant to 11 U.S.C. § 523(a)(8). ECU argues that the outstanding debt for any student loans are excepted from the discharge pursuant to section 523(a)(8)(A)(ii). ECU also argues that the $1,949.83 debt incurred from the repayment of the Division of Services for the Blind grant qualifies as an educational benefit overpayment by a governmental unit and is also excepted from the discharge pursuant to section 523(a)(8)(A)(i). Therefore, ECU argues its attempts to collect $5,344.50 from the Debtor after December 1, 2010 were not in violation of the discharge injunction.

## DISCUSSION

**Willful Violation**

Section 362(a) of the Bankruptcy Code imposes a stay on "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of a case under" title 11. 11 U.S.C. § 362 (a)(6). The Bankruptcy Code also provides that any "individual injured by any willful violation of a stay provided by this section shall recover actual damages . . . and in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362 (k)(1). This Court has held that "willfulness does not refer to the intent to violate the automatic stay, but the intent to commit the act which violates the automatic stay." *Lofton v. Carolina Fin. LLC (In re Lofton)*, 385 B.R. 133, 140 (Bankr. E.D.N.C. 2008) (citing *Citizens Bank v. Strumpf*, 37 F.3d 155 (4th Cir.1994), *overruled on other grounds* 516 U.S. 16, 11 (1995)). Furthermore, "[i]f the creditor intentionally acts and its actions violate the automatic stay, the creditor's acts are willful." *In re Peggy L. Jones*, No. 06-00380-8-RDD, at 3 (Bankr. E.D.N.C. June 27, 2007).

At the hearing, ECU stipulated that the letters and invoices were sent to the Debtor after the automatic stay was in place. The evidence shows that ECU's Office of Student Loans intentionally created an accounting and billing system in which students were automatically sent letters and invoices regarding delinquent accounts. At the time that the letters and invoices were sent to the Debtor, the Office of Student Loans had the intent to collect on a pre-petition debt with their dispatch. The letters and invoices were sent after the automatic stay was in effect and after notice of the filing had been received by ECU. Thus, the acts were in violation of the automatic stay. Therefore, because the Office of Student Loans caused the letters and invoices to be sent and such actions were a violation of the automatic stay, ECU willfully violated the automatic stay.

The Debtor calls to the Court's attention two cases where sanctions were issued against a creditor for violation of the automatic stay. The first, *In re Sands,* involved a creditor who after receiving notice of the bankruptcy petition and notice of a motion for sanctions for violation of the automatic stay continued to enter a residence that the debtors had moved out of but were still in possession of in order to secure the property. *In re Sands*, No. 10-12205C-13G (Bankr. M.D.N.C. April 1, 2011). However, *Sands* can be distinguished from the present case because the acts in violation of the stay involved physically entering the debtor's property and the violations continued even after a motion for sanctions was served on the creditor. In the Debtor's case, ECU only sent four demands for payment of non-dischargeable debts by mail. *In re Chavis,* the second case the Debtor points to, involved several billing attempts by Wake Medical Center after the hospital was served with the Notice of Commencement of the debtor's bankruptcy case. *In re Chavis*, 213 B.R. 462 (Bankr. E.D.N.C. 1997). In *Chavis,* the creditor repeatedly ignored the existence of the debtor's bankruptcy case and the authority of the court, which led the court to impose more severe sanctions. The court found that such violations warranted issuing sanctions in the amount of $10,000 in order to "get this creditor's attention." *Id.* at 464.

In the Debtor's case, ECU has stipulated that violations of the stay occurred and has recognized the significance of the automatic stay by correcting internal practices to allow for notification of any bankruptcy petition between departments. However, ECU is a large state supported university with a Cashier's Office and Office of Student Loans. The collection of tuition, fees, and loans is big business involving millions of dollars. ECU is to be commended for curing its deficiencies in collection procedures, but should have done so long before 2010. For having

failed to do so prior to 2010, the imposition of punitive damages is merited. No actual damages were proven by the Debtor.

Based on the foregoing, the Court finds that ECU's willful acts of sending four letters or invoices to the Debtor after receiving notice of the bankruptcy were in willful violation of the automatic stay. The Debtor is entitled to recover sanctions in the amount of $500.00 per violation of the automatic stay, totaling sanctions of $2,000.00.

**Contempt**

The Debtor also asserts that ECU should be held in contempt of court for violating the injunction of the discharge of the bankruptcy case. Section 523(a)(8) of the Bankruptcy Code limits a debtor's ability to discharge student loans and educational debt. Specifically, the Bankruptcy Code provides that a discharge under section 727 does not discharge an individual debtor from any debt

> unless excepting such debt from discharge under this paragraph would impose an undue hardship on the debtor and the debtor's dependents, for
> (A)(i) an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution; or
> (ii) an obligation to repay funds received as an educational benefit, scholarship, or stipend; or
> (B) any other educational loan that is a qualified education loan as defined in section 221(d)(1) of the Internal Revenue Code of 1986, incurred by a debtor who is an individual.

11 U.S.C. § 523(a)(8).

Unless a debtor asserts that "failure to discharge the debt would impose an 'undue hardship' on the debtor and his dependents" the debtor may not obtain a discharge of certain government-sponsored student loans. *United Student Aid Funds, Inc. V. Espinosa*, 130 S. Ct. 1367, 1373 (2010).

The Federal Rules of Bankruptcy Procedure require the party asserting that a debt is dischargeable to initiate an adversary proceeding on the matter. Fed. R. Bankr. P. 7001(6).

The Court finds that the debts that are the subject of the motion for violation of the discharge injunction are either educational loans used solely to pay qualified higher education expenses or an educational benefit overpayment made under a program funded by a governmental unit or nonprofit institution. Therefore, these debts are excepted from the discharge pursuant to section 523(a)(8). In order to establish that loans excepted by section 523(a)(8) are in fact dischargeable, an adversary proceeding must be initiated and the court must determine that an undue hardship would result from excepting the student loans or educational overpayment by governmental unit or nonprofit institution. Fed. R. Bankr. P. 7001(6). The Court finds that the Debtor did not initiate an adversary proceeding to determine whether an undue hardship would result from excepting the debts from the discharge. Therefore, the Court finds that ECU's attempts to collect $5,344.50 made on January 21, 2011, February 16, 2011, and March 15, 2011 were not in violation of the discharge injunction because the debts were excepted from the discharge pursuant to section 523(a)(8).

Therefore, the Motion for Sanctions is **GRANTED** and the Motion for Contempt is **DENIED.** ECU shall credit the Debtor's account in the sum of $2,000.00 for the outstanding non-dischargeable indebtedness within 10 days from the entry of this order.

**SO ORDERED.**

**END OF DOCUMENT**